FILED
2009 Jul-28  AM 10:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| BETTY K. BEARDEN, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 5:08-CV-0610-LSC |
| | ] | |
| MICHAEL J. ASTRUE, | ] | |
| Commissioner, | ] | |
| Social Security Administration, | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.      Introduction.

The plaintiff, Betty K. Bearden, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI"). Ms. Bearden timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Bearden was forty-four years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has at least a high school education. (Tr. at 23.) Her past work experience includes employment as a cashier. *Id*.

Ms. Bearden claims that she became disabled on November 18, 2004, due to chronic obstructive pulmonary disease ("COPD"), degenerative disc disease of the lumbar spine, mild scoliosis of the thoracic spine, migraine headaches, narcotic abuse, depression, anxiety, and residuals of two thirds lobectomy of the right upper lung. *Id*. at 16.

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. § 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. § 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. § 416.920(a)(4)(ii). Otherwise, the analysis continues to step

three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1.  20 C.F.R. § 416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id*.  If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. §  416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id*.  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id*.  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id*.

Applying the sequential evaluation process, the ALJ determined that Ms. Bearden had not engaged in substantial gainful activity since the alleged onset

of her disability. *Id*. at 16. According to the ALJ, Plaintiff's chronic obstructive pulmonary disease, degenerative disc disease of the lumbar spine, mild scoliosis of the thoracic spine, migraine headaches, narcotic abuse, depression, anxiety, and residuals of two thirds lobectomy of the right upper lung are considered "severe" based on the requirements set forth in the regulations. *Id*. However, he found that the "impairment or combination of impairments," neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. *Id*. at 16. The ALJ did not find Ms. Bearden's allegations to be totally credible, and he determined that she has the residual functional capacity to perform work with moderate or less pain where Claimant has no limitation in sitting, standing or walking; where Claimant can lift and/or carry up to thirty pounds occasionally and up to twenty pounds frequently; and where Claimant has no more than mild mental functional limitations with only moderate impairment of judgment in detailed or complex work-related decision; with the ability to understand/remember/carry out detailed instructions, and maintain concentration for at least two hours. *Id*. at 17.

According to the ALJ, Ms. Bearden is able to perform her past relevant work; she is a "younger individual," with "at least a high school education," as those terms are defined by the regulations. *Id*. at 23. He determined that Plaintiff's "transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled." *Id*. at 24. The ALJ weighed the testimony of the vocational expert and found that Ms. Bearden has the residual functional capacity to perform, in addition to her previous work as a cashier, "the requirements of representative light, unskilled occupations such as: assembler, ticket taker, and order clerk, existing at 1400, 1250, and 600 respectively in the state and at 130,000, 60,000, and 30,000 respectively in the national economy." *Id*. Even though Plaintiff's "ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations," the ALJ used the vocational expert "[t]o determine the extent to which these limitations erode the unskilled light occupational base." *Id*. The ALJ concluded his findings by stating that Plaintiff "has not been under a 'disability,' as defined in the Social Security Act, since November 18, 2004, the date the application was filed." *Id*. at 24.

II.     Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).   The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.*  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the

Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III. Discussion.

   Ms. Bearden alleges that the ALJ's decision should be reversed and remanded for three reasons. First, she believes that the ALJ failed to properly consider her documented chronic migraine headache pain under the Eleventh Circuit pain standard. (Doc. 8.) Second, Plaintiff contends that the ALJ did not afford proper weight to her main treating physician's, Dr. Bradford, medical opinion. *Id*. Finally, Plaintiff alleges the ALJ failed to properly consider all of Plaintiff's impairments in combination. *Id.*

   A.    Eleventh Circuit Pain Standard.

Plaintiff asserts that the ALJ's evaluation of her pain due to migraine headaches was improper, and the medical record demonstrates Plaintiff meets the three-part pain standard.  (Doc. 8.)  Specifically, Ms. Bearden alleges that "had [the ALJ] properly considered the medical record, he would have found Plaintiff disabled upon her pain complaints alone."  *Id.* Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence.  *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).  To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

The ALJ is permitted to discredit Claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so.  *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also*

Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). In *Dyer*, the Eleventh Circuit held that the ALJ properly applied the *Holt* standard when he considered the claimant's daily activities, frequency of his symptoms, and the types and dosages of his medications, to conclude that the claimant's subjective complaints were inconsistent with the medical record. *Id.* at 1212. "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is "not enough to enable [this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id.* (internal quotations omitted).

In this case, the ALJ found that Ms. Bearden's allegations of symptoms and limitations were only partially credible. (Tr. at 23.) Claimant alleges disability due to migraine headaches, deafness in the left ear, anxiety,

seizures, and depression. *Id.* at 18 (citing Exhibit 2E).  However, Claimant did not report any hearing problems in November 2006, the results of an ear examination were good, and Claimant could understand normal conversation. *Id.* at 19 (citing Exhibit 9F).  Further, the ALJ concluded that it was apparent from the record that the reported seizures were instead an anxiety disorder with panic attack symptoms. *Id.* (citing Exhibit 5F).

At the hearing, Claimant admits to having been addicted to medication, but denied failing drug tests[1]; reported she goes to the doctor when her migraines, which she stated last for 24-48 hours, but later stated 12-24 hours, are bad; she reported three to four migraines per week, but from 2005 to 2006 only had them once a month, with no explanation of the increase in frequency; Claimant reported problems with her neck, back, confusion, anxiety and depression, lifting her 14 pound grandson, sitting for more than 45 minutes to an hour, and standing for more than 15-30 minutes. *Id.* at 19. Claimant also reported she does not sleep well because her mind does not shut

---

[1]Claimant tested positive for Methadone on two drug tests performed by Dr. Hicks in February 2006 and August 2006. (Tr. at 22.) Claimant did not have a prescription for Methadone.  *Id.*

down, her legs cramp, and her back hurts.  *Id*.  She claims that over the last few months her pain level was a 9/10.  *Id*.

The ALJ found that her medically determinable impairments could reasonably be expected to produce some symptoms, but that Ms. Bearden's statements of intensity, persistence, and limitations of those symptoms were not entirely credible.  *Id*.  The ALJ noted Ms. Bearden testified that her daily activities were the same as she reported to Dr. Rogers in November 2006, which included a wide range of activities that involved at least light exertion and a fair amount of social interaction and mental concentration.  *Id*. at 22. These activities included: personal hygiene, watching television, house cleaning, cooking, laundry, washing dishes, and in May 2006, reported playing with her grandchildren and crafting.  *Id*. at 21. (citing Exhibit 10F, 7F). Additionally, the ALJ noted Claimant's credibility was diminished because of apparent narcotic abuse with narcotic seeking behavior[2], remote history of

_____

[2]In October 2006, Claimant reported that she had fallen down some stairs and had lower back pain. (Tr. at 21.)  The ER doctor diagnosed her with back strain and told her not to do heavy lifting.  *Id*.  She returned a number of times in October and was given Lortab, but examination of her back was unremarkable, and gait and station were normal.  *Id*.  The ALJ noted that on one occasion Claimant refused Norflex and demanded Demoral.  *Id*.  Though Claimant reported worsening back pain at the end of the month, x-rays revealed only mild scoliosis and minimal degenerative disc disease of the thoracic spine.  *Id*. (citing Exhibit 11F).  Previously, in December 2004, the ALJ noted

alcohol and methamphetamine abuse, and two failed drug screens where she

tested positive for Methadone for which she did not have a prescription.  *Id.*

at 22-23.  Further, the ALJ explained the Claimant's diminished credibility

where she worked with her alleged disabilities as late as November 2004 until

she was fired due to theft.  *Id.* at 23.

Unlike Ms. Bearden's claims of her subjective pain, during her

consultative physical examination with Dr. Ismail in November 2006, Claimant

reported only some back and extremity pain for which she said that she took

no medication; the following day she reported only 6/10 pain in her lower

back and hip.  *Id.* at 21.  Dr. Ismail's physical examination did not support Ms.

Bearden's claims, where he found Claimant had 5/5 muscle strength and

handgrip, intact fine and gross manipulation, no spasms or tenderness in the

low back, normal gait, and was able to perform heel-toe walking as well as

squatting.  *Id.*  After his physical examination, Dr. Ismail concluded that Ms.

Bearden could perform a "wide range of light or possibly even medium work

activity."  *Id.* (citing Exhibit 9F).  Accordingly, the ALJ had sufficient objective

---

Claimant had exhibited narcotic seeking behavior and refused to accept Ultram as a
substitute.  *Id.* at 20.  (citing Exhibit 5F).  Further, Claimant reported in October 2004
she had taken 40 Lortabs a day.  *Id.* at 22. (citing Exhibit 4F).

medical evidence to find Ms. Bearden's subjective claims as only partially credible.  (Tr. at 23.)

Additionally, the ALJ addressed Claimant's history of right thoracotomy and partial lung restriction, bouts with acute bronchitis, emphysematous change, and advanced COPD for her age.  *Id.* at 19.  The ALJ noted that there was little, if any, indication of continuing respiratory problems after Claimants acute bronchitis in December 2004. *Id.*   Claimant continued to use an albuterol inhaler as of mid-2006, and x-rays from 2006 show no change as compared to 2005.  *Id.*  (citing Exhibits 7F, 11F).  Further, in November 2006, Claimant denied any shortness of breath or chest pain related to respiratory problems, and although COPD was listed as a diagnosis, her respiratory examination was unremarkable.  *Id.* (citing Exhibit 12F).  Again, in March 2007, pulmonary examination was unremarkable.  *Id.* at 19. (citing Exhibit 13F).

Further, the ALJ addressed and discussed Claimant's mental impairments. (Tr. at 22-23.)  Beginning in 2002, Claimant reported a history of manic depressive disorder, but psychological examinations that year were consistently normal.  *Id.* at 22. (citing Exhibit 1F). A history of manic

depressive disorder was also noted several times in 2003, along with a history of anxiety and depression in 2003. *Id.* at 22. (citing Exhibit 2F). However, Claimant reported in May 2003 that Paxil and Buspar made her feel better. *Id.* at 22. She was given prescriptions for Buspar, Trazodone, and Atarax, and she requested refills through September 2004. *Id.* (citing Exhibit 3F). The ALJ noted that although Claimant was having difficulties with agitation and panic attack symptoms, Claimant had reported taking 40 Lortab a day in October 2004. *Id.* at 22. (citing Exhibits 5F,4F). The ALJ also noted that although Claimant voluntarily went to the hospital in May 2006, for complaints of pain and suicidal thoughts, she reported being off Lorcet for a few days but had been taking 20-30 per day. *Id.* at 22. (citing Exhibit 7F). The ALJ concluded that much of Claimant's anxiety and depression problems appear to be a result of narcotic abuse. *Id.* at 22. Further, Dr. Rogers' evaluation in November 2006, resulted in a GAF of 51 which indicates only moderate impairment of social and/or occupational functioning. *Id.* Moreover, Dr. Rogers noted that if drug use were to stop there would be a change in Claimant's mild limitations. *Id.* at 23. (citing Exhibit 10F).

It appears to this Court that the ALJ specifically addressed Plaintiff's allegations of pain in his opinion, and he provided explicit and reasonable reasons for rejecting her testimony. The objective medical evidence does not confirm the severity of the alleged pain, and the objectively determined medical conditions are not of such severity to reasonably expect the alleged pain. The objective medical and other evidence supports the ALJ's conclusion that Plaintiff's impairments did not cause disabling limitations, and instead shows that she could perform her past relevant light, unskilled work as a cashier. *Id.* at 23.

B.    Treating Physician's Diagnoses.

Plaintiff contends that the ALJ improperly evaluated her main treating physician, Dr. Bradford's opinion.  (Doc. 8.) The ALJ affords a physician's testimony "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted).  The weight afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon: the examining and treating relationship

the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source.  *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).  Furthermore, "good cause" exists for an ALJ to give substantially less weight to a treating physician's opinion when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440).

Additionally, this Court is aware that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."  20 C.F.R. §§ 404.1527(e), 416.927(d).   The Court weighs doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the

legal consequences of his condition." *Lewis*, 125 F.3d at 1440.  Such

physician's opinions are relevant to the ALJ's findings, but they are not

determinative, since the ALJ bears the responsibility for assessing a claimant's

RFC. *See e.g.,* 20 C.F.R. § 404.1546(c).

Here, the ALJ correctly gave Dr. Bradford's opinion less weight. (Tr. at

23.)  The ALJ found that Dr. Bradford's statement in March 2007 regarding

Claimant's increased anxiety, emphysema, headaches, and back pain were

inconsistent with the medical record.  *Id*.

First, the ALJ discredited Dr. Bradford's March 2007 statement that

Claimant's emphysema was increasing in severity and frequency.  (Tr. at 19.)

In January 2007, Claimant's examination was unremarkable, although COPD

was listed as a diagnosis.  *Id*. (citing Exhibit 12F).  In February 2007, Claimant

did not list any medication relating to her respiratory problems, but Dr.

Bradford noted them in his treatment record.  (Tr. at 19.) (citing Exhibit 9E).

However, the pulmonary examination was again unremarkable during that

time.  (Tr. at 19.) (citing Exhibit 13F).  Accordingly, the ALJ had substantial

objective medical evidence to conclude that Dr. Bradford's March 2007

statement that the Claimant's emphysema was increasing in severity or intensity was not supported by the record.  (Tr. at 19.)

Next, the ALJ appropriately detailed reasons for discrediting Dr. Bradford's March 2007 statement that Claimant's migraine's were increasing in severity and frequency.  *Id*. at 20. (citing Exhibit 13F).  The Claimant reported she had migraines three to four times a month in November 2006, but in October 2006, Claimant reported having them three to four times a week.  (Tr. at 20.)  The ALJ noted that although the Claimant reported 9/10 pain in early November 2007, she subsequently reported only 4/10 pain through March 2007[3].  *Id*.  Thus, the ALJ had substantial evidence to support the conclusion that Dr. Bradford's statement that Ms. Bearden's migraines were increasing in severity and frequency as of March 2007 was not supported by the record.

Further, the medical record shows Claimant reported lower back pain as only intermittent and alleviated with medication in November 2006, and Dr. Bradford's March 2007 examination showed no significant spine abnormality.  *Id*. at 21.  Additionally Dr. Ismail's consultative examination in

---

[3]The ALJ noted that the 9/10 pain was more accurately related to abdominal pain instead of migraine pain. (Tr. at 20.)

November 2006 showed Claimant had reported lower back and extremity pain but noted that it was controlled with medication. *Id.* According to that examination, Claimant drove and walked without assistance, demonstrated 5/5 muscle strength and grip, and had intact fine gross and motor skills. *Id.* Dr. Ismail found no spasms or tenderness in the lower back, and found only slight limitations regarding subjective findings which are under the Claimant's control such as range of motion and straight leg raises. *Id.* Dr. Ismail's assessment was fully consistent with his examination, Claimant's medical history, and her reported daily activities. *Id.* Accordingly, the ALJ gave more weight to Dr. Ismail's assessment which concluded that Claimant could perform a wide range of light or possibly medium work activity. *Id.* (citing Exhibit 9F).

The ALJ had "good cause" to afford Dr. Bradford's opinion less weight where according to the record the doctor's opinion was inconsistent with his own records, and Dr. Bradford's medical opinion was inconsistent with the record as a whole[4]. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Thus, the ALJ

---

[4]The ALJ also gave limited weight to Dr. Hicks' opinion. (Tr. at 21.) The ALJ had substantial evidence to support his decision including: the doctor's "objective findings" were word for word on each of Claimant's visit; the doctor voluntarily surrendered Claimant's controlled substance privilege; and, Claimant stopped seeing the doctor in

had "good cause" to give substantially less weight to Dr. Bradford's opinion because his opinion was not bolstered by the evidence, and the evidence supports an opposite finding.  *See Phillips*, 357 F.3d at 1241 (11th Cir. 2004) (*citing Lewis*, 125 F.3d at 1440).

C.      Consideration of Impairments in Combination.

Finally, Plaintiff alleges the ALJ failed to properly consider all of Plaintiff's impairments in combination.  Claimant contends that the ALJ's findings are in error by alleging the ALJ only recited Claimant's impairments of chronic obstructive pulmonary disease, degenerative disc disease of the lumbar spine, mild scoliosis of the thoracic spine, migraine headaches, narcotic abuse, depression, anxiety, and residuals of two thirds lobectomy of the right upper long. (Doc. 8.)  Claimant noted that nowhere in the ALJ's decision did he properly consider the combined effects of all impairments.  *Id.*

The ALJ must consider the combined effect of all impairments in assessing the claimant's disability.  *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987).  A claimant should be considered in the whole and not evaluated in the abstract as having several hypothetical and isolated illnesses.  *Davis v.*

_____

2006 after testing positive for methadone. *Id.* at 21-2.

*Shalala*, 985 F.2d 528, 532-33 (11th Cir. 1993).  In *Reliford v. Barnhart*, 157 Fed Appx. 194 (11th Cir. 2005), the Court found the ALJ had considered the combined effects of the claimant's impairments.  *Id.*  The Court reasoned that the Eleventh Circuit has "repeatedly held that an ALJ's finding regarding a claimant's "impairment or combination of impairments" established that the ALJ had indeed considered the impact of the claimant's combined impairments."  *Id.* (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1224-1225 (11th Cir. 2002).  Here, the ALJ sufficiently considered  the combined effects of claimant's impairments in both step two, three, and  four of the assessment process.  (Tr. at 16-17.)  In step two, the ALJ found "[t]he combination of the claimant's impairments" to be severe.  *Id.* at 16.   In step three, the ALJ assessed that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments."  *Id.*  Additionally in step four, the ALJ made his assessment "[a]fter careful consideration of the entire record."  *Id.* at 17.  Further, the ALJ "considered all symptoms and the extent to which these symptoms" could be reasonably construed as consistent with objective medical evidence.  *Id.*  This Court finds that the ALJ adequately evaluated Claimant's impairments in combination

through his discussion of the Claimant's physical and mental impairments.  *Id*.

at 16-23.   The ALJ's findings and articulations of the above impairments are

sufficient to establish that the ALJ did consider the combined effects of all

impairments.  See e.g., *Wilson*, 284 F.3d at 1224-25.  Therefore, the ALJ's RFC

finding is not in error.

IV.    Conclusion.

Upon review of the administrative record, and considering all of Ms.

Bearden's arguments, the Court finds the Commissioner's decision is

supported by substantial evidence and in accord with the applicable law.  A

separate order will be entered.

Done this 28th day of July 2009.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671